IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK CAPLE,

        Petitioner,

v.

ERIC P. BUSH, et al.,

        Respondents.

CIVIL ACTION
NO. 17-3989

**OPINION**

**Slomsky, J.**                                                                                          August 31, 2018

**I. INTRODUCTION**

Before the Court is the pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. No. 1) filed by Frank Caple, a prisoner incarcerated at the State Correctional Institution at Pine Grove located in Indiana, Pennsylvania. On December 4, 2017, United States Magistrate Judge Jacob P. Hart issued a Report and Recommendation ("R&R"), recommending that the Petition be dismissed without prejudice and that a certificate of appealability not be issued. (Doc. No. 11.) On December 13, 2017, Caple filed his Reply to the R&R, which this Court will construe to be his objections to the R&R. (Doc. No. 12.) Respondents did not file any responses to Caple's Reply. For reasons stated below, the Court will not adopt the R&R and will recommit the case to the Magistrate Judge with further instructions.[1]

---

[1] For purposes of this Opinion, the Court has considered Caple's Petition for Writ of Habeas Corpus (Doc. No. 1); Caple's Amendment to the Application of Habeas Corpus (Doc. No. 7); Caple's Memorandum of Issue and Authority for the Habeas Corpus Petition Application (Doc. No. 8); Defendant Bush's Response in Opposition to the Petition (Doc. No. 9), the Report and Recommendation (Doc. No. 11), Caple's Reply to the R&R (Doc. No. 12), and the pertinent state court record (Doc. No. 17).

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 16, 2013, police officers of the Pottstown Borough Police Department arrived at America's Best Value Inn, located in Pottstown, Pennsylvania. (Doc. No. 8 at 2.) The officers were responding to a report made by Cicely McCarty that she had been assaulted by a black male named "Flip" at the Inn. (Id.) Based on McCarty's report, the officers went to room 115, but neither McCarty nor Flip were there. (Id.) The police then determined that Flip might be in room 215 based upon what McCarty had told the police dispatcher. (Id.) Room 215 was registered to Sean Caple.[2] (Id.) Before they arrived at room 215, McCarty told the dispatcher that she left the motel but was still in Pottstown. (Id.) After knocking and announcing, the officers obtained a key from the motel owner and entered room 215, where they found Gail Benedetto in the bathroom and discovered two crack pipes. (Id.; see also Commonwealth v. Caple, 121 A.3d 511, 515 (Pa. Super. Ct. 2015)).

One of the officers stayed in the room while the other officer completed an application for a search warrant. (Id.) A magistrate eventually approved and signed the search warrant, limiting the officers to only seize drugs and drug paraphernalia. (Id.; see also Doc. No. 1 at 26.) At this point, McCarty had been located and was taken to the police station for questioning, along with Benedetto. (Id. at 2-3.) McCarty and Benedetto both gave statements and were released. (Id. at 3.) In her statement, McCarty indicated that Flip may also be known as "Frank." (Id.)

Officer Jonathan Gallagher, the police officer who prepared the search warrant application, took the evidence from the motel room and inspected it at the station. (Id.; Doc. No. 9 at 1.) Among the quantities of drugs and paraphernalia recovered, there was a Western Union

---

[2] The Petition and the Supplemental Memorandum do not state whether Sean Caple is related to Frank Caple, the Petitioner in this case.

receipt showing that Frank Caple sent $100 to Amber Fuller.  (Id.; see also Caple, 121 A.3d at 515.)  At some point, Officer Gallagher provided McCarty with a photo array of suspects, including a photo of Caple.  (Id.)  McCarty selected the photo of Caple and identified him as the individual known as Flip.  (Id.)

On February 16, 2013, the Pottstown police officers filed a criminal complaint against Caple containing the following charges: possession of a controlled substance with intent to deliver; simple possession of a controlled substance; possession of drug paraphernalia; simple assault; and harassment.  (Doc. No. 1 at 29-30; see also Caple, 121 A.3d at 514.)  On March 12, 2013, Caple was arrested.  (Doc. No. 8 at 3.)

Before his state court criminal trial commenced, Caple moved to suppress the items of physical evidence found during the search of room 215.  (Id.)  A hearing on the motion to suppress was held.  (Id.)  At the suppression hearing, the prosecution called Officer Gallagher to testify.  (Id.)  Evidently, he "testified to not knowing who 'Flip' nor what his real name was, or having any knowledge of who Frank Caple was during his search of Room 215."  (Id.)  The prosecution also produced "a number of documents authored by Officer Gallagher" and stated "that Gallagher only connected the name 'Flip' to 'Frank Caple' after the search of Room 215 was over, using the help of the victim Cicely McCarty."  (Id.)

The state court judge subsequently denied Caple's motion to suppress, finding that "the name on the receipt 'could be readily apparent.'"  (Id.)  During the trial, Caple renewed his motion to suppress, which was again denied.  (Id. at 4.)  Caple claims that the "evidence on the record clearly proves the officer did know who rented the room and it clearly was not Frank Caple."  (Id.)  On December 17, 2013, Caple was convicted of possession of a controlled

substance, possession of drug paraphernalia, and simple assault.  (Id.)  On June 4, 2014, he was sentenced to 4 to 20 years imprisonment.[3]  (Doc. No. 11 at 2.)

Caple, represented by Timothy Wile, Esquire, filed a direct appeal arguing (1) that the trial court abused its discretion by denying his motion to suppress the evidence found in room 215 because the officers initially entered without a valid warrant; and (2) that the trial court imposed an unconstitutional mandatory minimum sentence.  (Id.)  Caple also raised a claim that the Western Union receipt and other identifying documents should have been suppressed because these items were outside the scope of the search warrant.  (Id.)  However, Wile chose not to brief this issue.  (Id.)

The Pennsylvania Superior Court affirmed the lower court's decision regarding the initial, warrantless entry into room 215.  Caple, 121 A. 3d at 521.  The court granted relief as to Caple's second claim, vacating his sentence and remanding the case for resentencing.  Id. at 524.  On December 9, 2015, Caple was resentenced.  (Doc. No. 11 at 2.)

Caple then filed a petition for collateral relief under the Pennsylvania Post Conviction Relief Act ("PCRA").  (Id.)  In the petition, Caple argued that (1) his appellate counsel, Wile, was ineffective for failing to brief and argue the issue regarding the Western Union receipt and the scope of the arrest warrant; and (2) that counsel was ineffective for failing to request reargument or to seek review in the Pennsylvania Supreme Court, where "the Superior Court

---

[3] At the time of Caple's sentencing, the United States Supreme Court decision, Alleyne v. United States, 570 U.S. 99 (2013) was still pending.  This case ultimately held that any fact that increases the mandatory minimum sentence is an element of the crime and therefore must be submitted to a jury.  Id. at 102.  Accordingly, in Caple's case, the state court had "entered a sentence that was comprised of two mandatory minimum sentences."  Caple, 121 A.3d at 515.  The Pennsylvania Superior Court subsequently stated that it provided an alternate sentence because it "recognize[d] that future decisions in this Commonwealth may change the constitutionality of [Caple's] mandatory minimum sentence."  Id.

4

overlooked or misapprehended facts on record regarding the information possessed by law enforcement at the time of the warrantless search of Room 215." (Doc. No. 17, Ex. 13 ¶ 38.) The Court of Common Pleas of Montgomery County granted Caple's petition in a one-paragraph order, without an accompanying opinion or memorandum, which simply stated:

> AND NOW, this 26th day of April 2017, upon consideration of Defendant's "Amended Petition for Relief Pursuant to the Post-Conviction Relief Act," and following a hearing, it is hereby ordered and decreed that the Defendant's Petition is GRANTED and his right to file a Petition for Reargument and/or a Petition for Allowance of Appeal Nunc Pro Tunc regarding the suppression issue raised by Attorney Wile is REINSTATED. Patrick McMenamin, Jr., Esq. remains attorney of record and shall file the same forthwith.

(Doc. No. 17, Ex. 5.) Caple then filed a Petition for Reargument, which the Superior Court denied. (Doc. No. 11 at 3; see also Commonwealth v. Caple, No. 2379 EDA 2014, 2017 Pa. Super. LEXIS 582 Aug. 1, 2017.) Next, on August 29, 2017, Caple filed a petition in the Pennsylvania Supreme Court for allowance to appeal the Superior Court's denial of his Petition for Reargument. (Id.) On January 1, 2018, the Supreme Court of Pennsylvania denied his Petition.[4] Commonwealth v. Caple, 179 A.3d 7 (Pa. Super. Ct. 2018).

Then, on September 5, 2017, Caple filed the instant pro se Petition for Writ of Habeas Corpus. (Doc. No. 1.) Caple raises a single issue: "Conviction obtained by use of evidence gained pursuant [to] an unconstitutional search and seizure of a receipt from a motel." (Id. ¶ 12). Subsequently, on September 18, 2017, he filed a Motion for Allowance to Amend the Application/Petition for Writ of Habeas Corpus, requesting to add amended pages and exhibits. (Doc. No. 2.) Four days later, on September 22, 2017, Caple filed another Motion for Allowance to Amend the Application/Petition for Writ of Habeas Corpus, requesting to file an Amended

---

[4] At the time Magistrate Judge Hart issued the R&R for this case, Caple's Petition to the Pennsylvania Supreme Court was still pending.

Memorandum of Issue and Authority. (Doc. No. 3.) Both motions were granted by Magistrate Judge Hart on September 28, 2017. (Doc. No. 5.)

That same day, Caple filed his Amended Petition to include a second claim of ineffective assistance of counsel (Doc. No. 7), as well as a Memorandum of Issue and Authority for the Habeas Corpus Petition Application (Doc. No. 8), clarifying the two issues he raises in his Petition:

(1) Did the trial court commit constitutional error of law and/or abuse its discretion by denying Petitioner's Motion to Suppress the receipt seized from Room 215 and used to identify the Petitioner, where the officer clearly admitted on the record and through other evidence that the name on the receipt was not immediately apparent as required under the plain view doctrine?

(2) Did Petitioner's attorney's ineffective assistance clearly prejudice him from having a full and fair opportunity to really litigate the receipt suppression issue by depriving him of his constitutional right to appeal said issue?

(Doc. No. 8.)

Respondents filed a Response in Opposition to Petition for Writ of Habeas Corpus on October 27, 2017. (Doc. No. 9.) Caple subsequently filed a Reply on November 9, 2017. (Doc. No. 10.)

On December 4, 2017, Magistrate Judge Hart issued an R&R recommending that Petitioner's claims be dismissed without prejudice. (Doc. No. 11.) Upon review of the R&R, the Magistrate Judge seemingly considered the original Petition, not the amended version because the R&R only considered Caple's claim regarding the scope of the arrest warrant and the suppression of the receipt, but not the issue of ineffective assistance of counsel. The Magistrate Judge stated that "this petition does not include a claim of ineffective assistance of counsel." (Id. at 6.) Caple, however, filed an amendment to his Petition containing a second claim of

ineffective assistance of counsel, following the Magistrate Judge's Order granting him leave to do so. (Doc. Nos. 5, 7.)

Regarding the first issue, the Magistrate Judge began by explaining that Caple had two suppression issues, one which was the subject of Caple's petition for appeal in the Pennsylvania Supreme Court and the other which was the subject of Caple's present Petition before this Court. (Doc. No. 11 at 4.) The issue in his petition for appeal in the Pennsylvania Supreme Court was regarding the initial, warrantless entry by police to room 215. (Id.) Evidently, Caple understood the PCRA order to mean he could only appeal the suppression issue regarding the initial entry into the motel room—not the suppression issue regarding the Western Union receipt—to the Pennsylvania Supreme Court.[5] (Doc. No. 8 at 10.) The Magistrate Judge concluded that "it is most likely that the PCRA court intended to give Caple a chance to pursue reargument of the suppression issue <u>pursued</u> by Mr. Wile." (Doc. No. 11 n.1) (emphasis in original). The only suppression issue pursued by Wile concerned the initial entry into the motel room. Thus, it is evident that the only issue the Magistrate Judge considered was the scope of the arrest warrant and the Western Union receipt.

The Magistrate Judge found that claim was procedurally defaulted. (Id. at 5.) He reasoned that because Caple raised that claim on direct appeal, but failed to argue it in the direct appellate brief, under the Pennsylvania Rules of Appellate Procedure, the claim was waived. (Id.) Thus, because "the state court would deem that claim defaulted under an independent and adequate state rule," the claim was procedurally defaulted and unreviewable in federal court. (Id.) Despite finding the claim was procedurally defaulted, however, the Magistrate Judge recommended that the Petition be dismissed without prejudice because Caple's petition for

---

[5] Caple argued that the PCRA judge failed to address or rule on the receipt issue and Timothy Wile's failure to brief that issue. (Doc. No. 8 at 10.)

7

appeal to the Pennsylvania Supreme Court was still pending, "the exhaustion and procedural default issues raised by the claim regarding the Western Union receipt were not addressed by the Commonwealth," and Caple had not "thoroughly explored exceptions to these rules." (Id.)

Furthermore, the Magistrate Judge found that, even if Caple could overcome the procedural default barrier, his claim regarding the receipt suppression issue would likely be deemed non-cognizable. (Id. at 6.) Nonetheless, the Magistrate Judge explained that, "where a deprivation of fundamental fairness has not been briefed by either party, it would be unfair to decide unequivocally at this stage that Caple could never show it." (Id.) Thus, he recommended again that the Petition be dismissed without prejudice. (Id.)

On December 12, 2017, Caple filed his Reply to the R&R. (Doc. No. 12.) Caple raises one main Objection to the R&R: that Magistrate Judge Hart did not acknowledge "that he granted the two motions to amend the habeas petition." (Id. at 5.) The amendments added an ineffective assistance of counsel claim to the Petition, and the Amended Memorandum included a section addressing that issue. (Doc. Nos. 2, 3.) This Objection is the basis for the rest of Caple's argument in his Reply. He asserts that ineffective assistance of counsel is a cause for the procedural default. (Doc. No. 12 at 6.) Moreover, he argues that the Western Union receipt issue is a meritorious claim and Wile's failure to brief it constitutes ineffective assistance. (Id. at 7-8.) Additionally, Caple argues that the PCRA judge failed to address and dispose of the ineffective assistance of counsel claim; therefore, Caple, "through no fault of his own, cannot complete one full round of Pennsylvania's appellate procedure to exhaust his habeas claims here." (Id. at 9.) Accordingly, Caple argues the PCRA judge's actions are another cause for the procedural default. (Id. at 9-10.)

On December 15, 2017 and December 26, 2017, Caple filed two Motions of Notice to the Court in which he states that, based on the R&R and Respondents' Answer to the Petition, "the Clerk's office made a tremendous mistake for failure to send copies of my two motions to amend and attached amendment to the Judge and Respondent in this case." (Doc. Nos. 14, 15.) The two Motions of Notice are identical except for the addition of a sentence in the latter filing: "And please send Petitioner a copy [of] the court DOCKET, and make the court aware of the circumstances of this tremendous mistake." (Doc. No. 15.)

On January 30, 2018, Caple filed another Motion of Notice to the Court in which he notified the Court that his Petition for Allowance of Appeal was denied by the Pennsylvania Supreme Court. (Doc. No. 18.)

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief. See § 636(b)(1)(B); E.D. Pa. Civ. R. 72.1. Any party may file objections in response to the magistrate judge's report and recommendation. § 636(b)(1)(C). Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge. The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions."[6] Id. "[I]t must be assumed that the normal practice of the district judge is to give

---

[6] See Walker v. Kerestes, No. 10-2009, 2011 WL 1162387, at *5 (E.D. Pa. Mar. 30, 2011) (determining that the magistrate judge incorrectly dismissed petitioner's habeas petition for untimeliness and recommitting the matter to the magistrate judge to decide on the merits); Schwartz v. Colleran, No. 04-5399, 2005 WL 1993647, at *13 (E.D. Pa. Aug. 11, 2005) (recommitting the case to the magistrate judge to consider the petitioner's ineffective assistance of counsel claim because the parties did not address the applicability of new case law to the issue).

some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also § 636(b).

IV. ANALYSIS

A federal court will not address the merits of claims presented in a habeas corpus petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is based on considerations of comity between the state and federal courts. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999).

The exhaustion requirement does not apply "in cases where the state courts would not consider the unexhausted claims because they are procedurally barred." Slutzker v. Johnson, 393 F.3d 373, 380 (3d Cir. 2004). The Slutzker Court continued:

> The mere existence of a state procedural rule that would appear to bar relief is not, however, sufficient to avoid the exhaustion requirement. The policy behind the exhaustion requirement is to give state courts a full opportunity to address the petitioner's claims. Doctor, 96 F.3d at 681. Given this, if there is any likelihood that the state courts would consider the merits of a petitioner's unexhausted claim, the federal courts should dismiss his petition and allow him to seek relief in state courts. Id. at 686 (Scirica, J., concurring). We reach the merits only if state law "clearly forecloses state court review of the unexhausted claims." Toulson, 987 F.2d at 987.

Id. (emphasis in original).

A federal court will not review a prisoner's habeas corpus petition if a state court has made a decision based on an independent and adequate state law grounds. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). This applies to both substantive and procedural rules. Id. Procedural default occurs when a petitioner cannot obtain state court review of his claims because of noncompliance with state procedural rules. Martinez v. Ryan, 566 U.S. 1, 9 (2012). When procedural default occurs, a federal court will not review the habeas claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

Cause for a procedural default "must ordinarily turn on whether the prison can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel is cause for a procedural default; such a claim, however, must first be presented to state courts "as an independent claim before it may be used to establish cause for a procedural default." Id. In the interest of comity, federal courts should not be in the position of adjudicating unexhausted claims for which state review may still be available. Id.

In Strickland v. Washington, the Supreme Court established a two-part test for proving ineffective assistance of counsel: (1) counsel's performance was deficit; and (2) counsel's errors resulted in prejudice or an adverse effect on the defense. 466 U.S. 668, 691-92 (1984). To establish deficient performance, the defendant must show that any acts or omissions fell below the objective standard of reasonable professional judgment. Id. at 688-89. To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. An ineffective claim is "an attack on the fundamental fairness of the proceeding whose result is challenged" and because fundamental fairness is "the central concern of the writ of habeas corpus," no special standards apply to such claims made in habeas cases. Id. at 697-98.

In this case, Caple raises two claims: (1) the Western Union receipt should have been suppressed at trial, and (2) his counsel was ineffective by failing to brief and argue the receipt suppression issue. The R&R acknowledges that Caple raised the receipt suppression issue in his direct appeal but that his attorney failed to brief and argue it. Based on the Pennsylvania Rules

11

of Appellate Procedure, the Magistrate Judge concluded that this claim is procedurally defaulted. Even though he is correct in arriving at this conclusion, his inquiry should not have ended there. As explained supra, the R&R did not address Caple's second claim of ineffective assistance of counsel, which was included in the Amended Petition.

In order to effectively determine whether Caple has cause for the procedural default, the Magistrate Judge must consider whether Caple's ineffective assistance of counsel claim has been exhausted in the state courts. Because the PCRA court did not clearly explain its disposition of that claim, it is unclear whether any state law review was undertaken. If that claim has been exhausted, then the Magistrate Judge must decide the merits of that claim. Because Caple's alleged causes for the procedural default hinge on the ineffective assistance of counsel analysis and the PCRA court analysis, the Court will recommit this matter to the Magistrate Judge to decide these questions accordingly.

## V. CONCLUSION

For the foregoing reasons, the Court will not adopt Magistrate Judge Hart's Report and Recommendation (Doc. No. 11). Accordingly, the Court will recommit this matter to the Magistrate Judge for further consideration in accordance with this Opinion. An appropriate Order follows.