IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK CAPLE,

              Petitioner,

    v.

ERIC P. BUSH, et al.,

              Respondents.

CIVIL ACTION
NO. 17-3989

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 3

II.     BACKGROUND ............................................................................................. 5

  A.    Petitioner Frank Caple's State Court Conviction ............................................ 5

  B.    Caple's Direct Appeal and Resentencing ....................................................... 6

  C.    Caple's Petition for Collateral Review under the Post Conviction Relief Act ("PCRA") 9

  D.    Caple's Amended Petition for Writ of Habeas Corpus in Federal Court ........................ 12

      1.    The First Report and Recommendation ................................................... 14

      2.    The Second Report and Recommendation ................................................ 15

      3.    Caple's Motions for Leave to Amend the Amended Petition for

          Writ of Habeas Corpus ........................................................................ 16

      4.    Caple's Motion to Stay the Proceedings ................................................. 17

III.    STANDARD OF REVIEW ............................................................................ 18

IV.    ANALYSIS ................................................................................................... 20

A.     The Court will Deny Caple's Claim that the State Trial Court Erred by Denying His Motion to Suppress the Western Union Receipt ............................................................ 21

    1.     The Western Union Receipt Claim is Procedurally Defaulted ............................ 22

    2.     The Court will not Excuse the Procedural Default of the Western Union Receipt Claim ................................................................................................................. 24

    3.     The Western Union Receipt Claim is Non-Cognizable ........................................ 31

B.     The Court will Deny Caple's Ineffective Assistance of Counsel Claim......................... 34

    1.     Caple's Claim that Mr. Wile was Ineffective is not Procedurally Defaulted, but the Court will not Stay the Proceedings Because the Claim is Meritless .................. 35

    2.     Caple's Claim that Ms. McMahon was Ineffective is Procedurally Defaulted and Meritless ............................................................................................................. 39

C.     Caple's Motions for Leave to Amend the Amended Petition .......................................... 44

D.     Caple is Not Entitled to a Certificate of Appealability.................................................... 46

V.     CONCLUSION ................................................................................................................. 46

<u>**OPINION**</u>

**Slomsky, J.**                                                        **March 20, 2019**

## I.    INTRODUCTION

Before the Court is the <u>pro</u> <u>se</u> Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner Frank Caple ("Caple"), a state prisoner incarcerated at the Lackawanna County Prison in Scranton, Pennsylvania.[1]  In the Amended Petition, Caple brings a Fourth Amendment evidentiary claim and a Sixth Amendment ineffective assistance of counsel claim.

On December 4, 2017, Magistrate Judge Jacob P. Hart issued a Report and Recommendation ("R&R"), recommending that Caple's Fourth Amendment claim be dismissed without prejudice and that a certificate of appealability not be issued.  (Doc. No. 11.)  On December 13, 2017, Caple filed a Reply to the R&R, which raised a single Objection: that the R&R did not address his Sixth Amended ineffective assistance of counsel claim.  (Doc. No. 12.)  Upon review of the R&R, this Court found that Caple was right and that the Magistrate Judge had inadvertently missed the ineffective assistance of counsel claim.  For that reason, the Court recommitted the case back to the Magistrate Judge for a second R&R.  (Doc. Nos. 19, 20.)

On October 10, 2018, Magistrate Judge Hart issued a second R&R, recommending that the Court dismiss Caple's ineffective assistance of counsel claim.[2]  (Doc. No. 22.)  On October 31,

---

[1]   When the Amended Petition for Writ of Habeas Corpus was filed, Frank Caple was incarcerated at the State Correctional Institution at Pine Grove, which is located in Indiana, Pennsylvania.  On February 15, 2019, Caple notified the Court that he was moved to the Lackawanna County Prison, which is located in Scranton, Pennsylvania.  (Doc. No. 30.)

[2]   On September 17, 2018, Caple filed a Motion of Notice to the Court, asking the Court to take note that his Sixth Amendment ineffective assistance of counsel claim incorporated claims against two different attorneys.  (Doc. No. 21.)  The Court has addressed the claims regarding both attorneys in this Opinion.  Therefore, the Motion of Notice to the Court (Doc. No. 21) will be denied as moot.

2018, Caple filed a Reply to the second R&R, in which he raised two Objections.  (Doc. No. 23.)

Then, on November 19, 2018, Caple filed a Motion for Leave to Amend the Amended Petition, to

which he attached the proposed amended petition.  (Doc. No. 25.)  On November 28, 2018, Caple

filed another Motion for Leave to Amend the Amended Petition, this time attaching a proposed

amended memorandum of issues and authority in support of his proposed amended petition.  (Doc.

No. 26.)  Finally, on January 11, 2019, Caple filed a Motion Requesting Leave for a Stay in

Abeyance So Petitioner May Exhaust Some Issues.[3]  (Doc. No. 28.)  Respondents have not filed a

Response to the Objections, the Motions to Amend the Amended Petition, or the Motion

Requesting Leave for a Stay.

 The Amended Petition and the related Motions are now ripe for disposition.  For reasons

discussed below, the Court will deny Caple's Amended Petition for Writ of Habeas Corpus (Doc.

No. 7), Caple's Motions for Leave to Amend the Amended Petition (Doc. Nos. 25, 26), and Caple's

Motion Requesting Leave for a Stay (Doc. No. 28).[4]

---

[3] On November 30, 2018, Caple filed a Motion Requesting a Final Order from the State Trial
Court.  (Doc. No. 27.)  He also filed the Motion in state court, and on December 24, 2018, the
Court of Common Pleas for Montgomery County issued the requested final order.  (See Doc.
No. 28.)  As a result, the Court will deny the Motion Requesting Final Order (Doc. No. 27) as
moot.

[4] For the purposes of this Opinion, the Court has considered Caple's Amended Petition for Writ
of Habeas Corpus (Doc. No. 7); Caple's Amended Memorandum of Issue and Authority in
Support of the Amended Petition (Doc. No. 8); Respondents' Response in Opposition to the
Petition (Doc. No. 9); the first Report and Recommendation (Doc. No. 11); Caple's Reply to
the first R&R (Doc. No. 12); the second Report and Recommendation (Doc. No. 22); Caple's
first Motion for Leave to Amend the Amended Petition (Doc. No. 25); Caple's second Motion
for Leave to Amend the Amended Petition (Doc. No. 26); Caple's Motion Requesting Leave to
Stay in Abeyance So Petitioner May Exhaust Some Issues (Doc. No. 28); and the pertinent state
court record in this case.

## II.    BACKGROUND

### A.    Petitioner Frank Caple's State Court Conviction

On February 16, 2013, several police officers from the Pottstown Police Department were dispatched to respond to a 911 call from Cicely McCarty, a woman who had reported that she had been assaulted by a black man named "Flip" in Room 115 of America's Best Value Inn in Pottstown (the "Inn"), which is located in Montgomery County, Pennsylvania. (Doc. No. 17-104 at 5.)  When the officers arrived at the Inn, neither McCarty nor Flip were in Room 115.   (Id.)

After questioning witnesses at the scene, the officers learned that Flip had an additional room at the motel—Room 215, which was registered to Sean Caple.[5]  (Id.)  At that point, officers went to Room 215, knocked on the door, and announced themselves, but no one answered. Worried that McCarty was inside, the officers asked the motel manager to open the door, which he did.  Inside Room 215, Officer Jonathan Gallagher found a woman named Gail Benedetto hiding in the bathroom, but did not find McCarty or Flip.  He also observed two metal crack pipes in plain view on the bedroom dresser.  (Id.)  Soon thereafter, Officer Gallagher heard over the police radio that officers had located McCarty and were transporting her to the police station.  (Id.)

Due to the presence of the crack pipes, Officer Gallagher applied for and obtained a warrant to search Room 215.  During the execution of the search warrant, officers found quantities of drugs and drug paraphernalia.  (Id. at 5-6.)  Officers also found a stack of business cards that said "Flip Entertainment" and a Western Union receipt bearing the name "Frank Caple" in a backpack in Room 215.  (Id.)

Meanwhile, police officers at the Pottstown Police Station took McCarty's statement.  She told the police that the man who assaulted her was known as either "Flip" or "Frank."  (Id. at 3-4.)

---

[5]   None of the filings in the record state whether Sean Caple is related to or an alias for Frank Caple, Petitioner in this case.

Because the police had found the Western Union receipt bearing Caple's name in Room 215, the police then showed McCarty a photo array of suspects which included Caple. McCarty selected Caple's photo and identified him as the man who had assaulted her. (Id. at 6.)

Following the identification, the Pottstown police filed a criminal complaint against Caple, which contained the following charges: (1) possession of a controlled substance with intent to deliver; (2) simple possession of a controlled substance; (3) possession of drug paraphernalia; (4) simple assault; and (5) harassment. (Id. at 1-4.) On March 12, 2013, Caple was arrested. (Doc. No. 17-102 at 4.)

On May 29, 2013, Caple filed an omnibus suppression motion to exclude evidence found in Room 215 of the Inn. Through his attorney, Carol Sweeney, Esquire, Caple argued that (1) all evidence seized from Room 215 should be suppressed because the initial entry by the police was warrantless and violated the Fourth Amendment, and (2) the Western Union receipt bearing Caple's name should be suppressed because it exceeded the scope of the warrant and its seizure did not fall within an exception to the Fourth Amendment warrant requirement. (Doc. No. 17-99.) On December 10, 2013, after a suppression hearing, the trial court denied the motion. (Doc. No. 17-83.) On December 17, 2013, following a three-day jury trial in the Court of Common Pleas for Montgomery County, Caple was convicted of possession of a controlled substance, possession of drug paraphernalia, and simple assault. (Doc. No. 17-13 ¶ 2.) On June 4, 2014, Caple was sentenced to four (4) to twenty (20) years' imprisonment. (Id. ¶¶ 3-4.)

**B.    Caple's Direct Appeal and Resentencing**

On August 18, 2014, Caple filed a timely Notice of Appeal of his conviction and sentence. (Id. ¶ 9.) On appeal, he was represented by Montgomery County Public Defenders Christa A. Miller, Esquire, and Timothy P. Wile, Esquire. On September 21, 2014, pursuant to Pennsylvania

Rule of Appellate Procedure 1925(b),[6] Caple's attorneys filed with the trial court a Concise Statement of Matter Complained of on Appeal ("Rule 1925(b) Statement"). Caple's attorneys raised seven issues in the Rule 1925(b) Statement, including the following: (1) the trial court abused its discretion by denying his suppression motion because the initial entry by the police into Room 215 was warrantless; (2) the trial court abused its discretion by denying his suppression motion because the Western Union receipt was beyond the scope of the warrant and its seizure did not fall into an exception to the Fourth Amendment warrant requirement; and (3) the trial court imposed an unconstitutional mandatory minimum sentence. (Id. ¶ 10.) Mr. Wile then filed Caple's appellate brief in the Pennsylvania Superior Court. Significantly, Mr. Wile did not raise the Western Union receipt issue in the appellate brief. Based on his professional judgment, he made the strategic decision to only brief the warrantless entry issue and the unconstitutional sentence issue.

On July 24, 2015, the Pennsylvania Superior Court affirmed the trial court's decision to deny Caple's motion to suppress the evidence seized after the warrantless entry. The Superior Court granted relief on Caple's sentencing claim, vacating his sentence and remanding the case to the trial court for resentencing.[7] See Commonwealth v. Caple, 121 A.3d 511 (Pa. Super. Ct. 2015).

---

[6]  Pennsylvania Rule of Appellate Procedure 1925(b) states the following:

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa. R. App. P. 1925(b).

[7]  In Alleyne v. United States, the Supreme Court of the United States held that any fact that increases a mandatory minimum sentence is an element of the crime and therefore must be submitted to the jury. 570 U.S. 99 (2013). At the time of Caple's sentencing, this decision was still pending and the trial court was unsure how the decision would effect 18 P.a. C.S.A. § 7508,

Because Mr. Wile did not brief the Western Union receipt issue in the appellate brief, the Superior Court did not address it. Id. Caple and his attorneys did not appeal the Superior Court's decision to deny relief on the warrantless entry claim, and on December 9, 2015, he was resentenced by the trial court. (Doc. No. 17-44.) At his resentencing, Caple was represented by his trial counsel, Carol Sweeney.

On December 21, 2015, Ms. Sweeney challenged Caple's resentencing in a Post-Sentence Motion, which was denied by the trial court on January 12, 2016. (Doc. No. 17-13 ¶¶ 22-23.) Caple then filed a Notice of Appeal regarding his resentencing. On February 23, 2016, the Court appointed Erin Lentz McMahon, Esquire to represent Caple on that appeal. On March 15, 2016, Ms. McMahon filed a Concise Statement of Matters Complained of on Appeal to the trial court, pursuant to Rule 1925(b). (Id. ¶¶ 27-28.) Ms. McMahon raised several issues regarding the sentencing, and also raised ineffective assistance of counsel claims regarding Mr. Wile's representation of Caple on direct appeal and Ms. Sweeney's representation of Caple at the resentencing. (Id. ¶ 30.)

In an opinion issued June 15, 2016, the trial court addressed the sentencing issues raised by Ms. McMahon, but declined to address the ineffective assistance of counsel claims because those issues were more appropriate for collateral review.[8] (Id. ¶¶ 31-32.) Thereafter, Caple, in

---

the Pennsylvania statute which set forth drug trafficking sentencing and penalties. To deal with the uncertainty, the trial court imposed a sentence under Section 7508, but also provided an alternate sentence in case Section 7508 was deemed unconstitutional under Alleyne. See Commonwealth v. Caple, 121 A.3d 511, 515 (Pa. Super. Ct. 2015). On appeal, the Superior Court held that the trial court's reliance on Section 7508 was in error because Alleyne rendered the statute unconstitutional. Id. at 522.

[8] As noted above, Pennsylvania Rule of Appellate Procedure 1925(b) requires a defendant to file a "concise statement of the errors complained of on appeal" with the trial court before filing a brief with the appellate court. Pa. R. App. P. 1925(b). After a defendant files his Rule 1925(b)

consultation with Ms. McMahon, decided to withdraw the appeal of his resentencing. On July 28, 2016, he filed a Praecipe to Discontinue with the Pennsylvania Superior Court. (Id. ¶ 33.) McMahon withdrew her appearance on behalf of Caple on October 24, 2016. (Doc. No. 17-15.)

### C. Caple's Petition for Collateral Review under the Post Conviction Relief Act ("PCRA")

Meanwhile, on December 4, 2015, before he was resentenced, Caple filed a pro se petition for collateral relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. § 9541, et seq. (Id. ¶ 20.) Then, from December 2015 to September 2016, Caple filed three pro se amendments to his PCRA petition. In these filings, Caple claimed, among other things, that (1) Mr. Wile was ineffective in his representation of Caple on direct appeal, (2) Ms. Sweeney was ineffective in her representation of Caple on the Post-Sentence Motion, and (3) Ms. McMahon was ineffective in her representation of Caple on the appeal of the Post-Sentence Motion. (See Doc. No. 17-13.)

On September 15, 2016, the Court of Common Pleas for Montgomery County appointed Patrick McMenamin, Jr., Esquire to represent Caple on his PCRA petition. (Doc. No. 17-18.) On December 15, 2016, McMenamin filed an Amended PCRA Petition on behalf of Caple, which, in Paragraph 38, limited Caple's claims to the following issues:

    a. Whether appellate counsel Wile was ineffective for his failure to properly brief and argue the issue of whether the search warrant was limited in scope to drugs and drug paraphernalia, and failed to include a search for documentary indicia of possession of Room 215, thereby rendering the seizure of the money order and the business cards improper, as they had no immediate appearance of criminality and were not subject to seizure via the plain view doctrine . . . ;

    b. Whether appellant was denied the effective assistance of counsel for failure of the Public Defender to request reargument pursuant to the Pa. R. A. P. 2543(2), or to seek allowance of appeal to the Supreme Court, where Petitioner believes the Superior Court overlooked or misapprehended facts of record regarding the

---

statement, Rule 1925(a) obligates the trial court judge to issue an opinion addressing the issues raised by the defendant. Pa. R. App. P. 1925(a).

> information possessed by law enforcement at the time of the warrantless search of Room 215?

(Doc. No. 17-13 ¶ 38.)

On April 25, 2017, the trial court held a hearing on the Amended PCRA Petition. At the hearing, Mr. Wile appeared as a witness for the Commonwealth of Pennsylvania and explained why he decided to abandon the Western Union receipt issue on direct appeal. He testified that he chose not to brief the Western Union receipt issue because he thought that the warrantless entry issue had a stronger chance of success on appeal:

| | |
|---|---|
| Counsel: | Do weaker issues dilute the potency of stronger issues in the context of appeals? |
| Mr. Wile: | Absolutely. |
| Counsel: | So you don't want to raise the weaker issues with a potentially meritorious issue? |
| Mr. Wile: | Well it depends how weak the issue is . . . . [I]f the issue isn't close or isn't nearly as strong, you want the Court to focus on the major issue you want to bring, and that's the one most likely to afford relief. |
| Counsel: | Would you consider the remedy of an appeal when choosing the issues? So the remedy that the Court might craft for a specific issue, do you consider that? |
| Mr. Wile: | Absolutely . . . . [I]n this case, we had a challenge to the initial entry into the motel room. We argued that it was unconstitutional, that there wasn't an exigent circumstance for the police officer to enter that motel room at the time. Had we prevailed on that, everything that they found in that motel room would have been tossed out, and there would have been no need to go after the search warrant. |
| | On the other hand, the issue with the receipt and the business card, it wasn't as clear-cut. I don't think it was that strong that even if we would have lost on the first, they would have granted us relief on the second. The trial court opinion I think handled it pretty well, in my research, didn't lead me to believe that the issue would have granted Mr. Caple any relief. |

(Doc. No. 17-6 at 26-27.)  Then, Mr. Wile testified about the effect of the Western Union receipt on the Commonwealth's case against Caple at trial:

Counsel:    So having all that as a backdrop, was there a reason that you didn't raise any claim related to the money order receipt or the business cards in your appellate brief?

Mr. Wile:   I didn't believe that the argument that the police had exceeded the scope of the search warrant was that viable.  I reached that conclusion based upon again the trial court handling of that issue and my own independent research.

Counsel:    What remedy would the Superior Court have crafted for the issue?

Mr. Wile:   If the Superior Court would have agreed that that was beyond the scope of the search warrant, they probably would have excluded the business card and the money order received.

Counsel:    Would that have ended the Commonwealth's case?

Mr. Wile:   . . . I think it might have given the Commonwealth a little bit harder burden, but I don't think it would have done anything close to getting the original entry knocked out.

                                            ***

Counsel:    And did you have a fear that raising the lesser issue, the receipt and the money order and business cards—did you have a fear that that would detract from your meritorious issues?

Mr. Wile:   I don't know if detract is the accurate word.  I think it would divert the Court's attention to what I felt was the key issue in the case, which was the illegal entry . . . . I wanted to keep the Superior Court focused on that rather than having them divide their focus in an issue that is not as compelling in my mind and would not have afforded my client the relief that we wanted, which was to get all the evidence tossed out and not just those two items.

(Id. at 29-31.)

At the hearing, Mr. McMenamin told the trial court that Caple was no longer pursuing any claims of ineffective assistance of counsel against Ms. McMahon, the attorney who represented him on the appeal of the Post-Sentence Motion.  The only issues raised on collateral review were

11

the two issues set forth above in Paragraph 38 of the Amended PCRA Petition that was filed on December 15, 2016 by Mr. McMenamin.   (Id. at 5, 14-19.)

On April 26, 2017, the trial court resolved the Amended PCRA Petition in a one-paragraph order, which stated:

> AND NOW, this 26th day of April 2017, upon consideration of Defendant's "Amended Petition for Relief Pursuant to the Post-Conviction Relief Act," and following a hearing, it is hereby ordered and decreed that the Defendant's Petition is GRANTED and his right to file a Petition for Reargument and/or a Petition for Allowance of Appeal Nunc Pro Tunc regarding the suppression issue raised by Attorney Wile is REINSTATED.  Patrick McMenamin, Jr., Esq. remains attorney of record and shall file the same forthwith.

(Doc. No. 17-5.)  The paragraph did not state whether Caple could pursue the Western Union receipt issue on appeal.  Caple did not ask the trial court to clarify its position and did not appeal its decision.

Pursuant to the trial court's April 26, 2017 order, Caple filed a Notice of Appeal, seeking reconsideration and reargument from the Superior Court's July 24, 2015 decision on the warrantless entry issue.  (Doc. No. 17-4.)  The Superior Court denied Caple's request, and on August 27, 2017, Caple filed a petition to the Pennsylvania Supreme Court, seeking leave to appeal the Superior Court's decision.  (Doc. No. 17-2.)  The Pennsylvania Supreme Court denied his petition on January 1, 2018.  (Doc. No. 18.)

### D.   Caple's Amended Petition for Writ of Habeas Corpus in Federal Court

On September 5, 2017, while his petition seeking leave from the Pennsylvania Supreme Court to appeal the warrantless entry issue was still pending, Caple filed a pro se Petition for Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  In his Petition, Caple raised one ground for relief: that his conviction in state court was the product of an unconstitutional search and seizure of the Western Union receipt.  (Id. at 20.)

On September 18, 2017, Caple filed a Motion for Allowance to Amend the Application/Petition for Writ of Habeas Corpus, in which he requested leave to add amended pages and exhibits to the Petition. (Doc. No. 2.) Four days later, on September 22, 2017, Caple filed another Motion for Allowance to Amend the Application/Petition for Writ of Habeas Corpus, this time requesting leave to file an Amended Memorandum of Issue and Authority. (Doc. No. 3.)

On September 26, 2017, the Court referred the matter to Magistrate Judge Jacob P. Hart (Doc. No. 4), and on September 28, 2017, Magistrate Judge Hart granted both Motions for Allowance to Amend the Application/Petition for Writ of Habeas Corpus (Doc. No. 5). That same day, Caple filed an Amended Petition for Writ of Habeas Corpus (Doc. No. 7) and an Amended Memorandum of Issue and Authority for the Habeas Corpus Petition (Doc. No. 8). In the Amended Petition, Caple added an ineffective assistance of counsel claim:

> Attorney Miller, raised receipt suppression issue in 1925(b) statement . . . but Attorney Wile failed to brief the issue. Also Attorney Lentz-McMahon did not properly raise the issue in Second Appeal. Plus (PCRA) court never addressed issue.

(Doc. No. 7 at 1.) In the Amended Memorandum of Issue and Authority, Caple framed his two claims in the Amended Petition as two questions:

1. Did the trial court commit constitutional error of law and/or abuse its discretion by denying Petitioner's Motion to Suppress the receipt seized from Room 215 and used to identify the Petitioner, where the officer clearly admitted on the record and through other evidence that the name on the receipt was not immediately apparent as required under the plain view doctrine?

2. Did Petitioner's attorney's ineffective assistance clearly prejudice him from having a full and fair opportunity to really litigate the receipt suppression issue by depriving him of his constitutional right to appeal said issue?

(Doc. No. 8 at 1.)

### 1. The First Report and Recommendation

On December 4, 2017, Magistrate Judge Hart issued a Report and Recommendation ("R&R"), in which he recommended that the Court dismiss Caple's petition without prejudice. (Doc. No. 11.) As an initial matter, the Magistrate Judge noted that Caple's state court case had two suppression issues: (1) the warrantless entry issue that was not raised in the petition, but, at the time the R&R was issued, was still pending in the Pennsylvania Supreme Court; and (2) the Western Union receipt issue that Caple raised in the Amended Petition.[9] (Id. at 4.) After distinguishing the two issues, Magistrate Judge Hart found that Caple had waived the Western Union issue on direct appeal. Although Caple's attorneys included the issue in the Rule 1925(b) Statement, Mr. Wile did not raise the issue in the appellate brief. As a result, the Magistrate Judge explained that "the claim which Caple has raised here must be dismissed as unexhausted and procedurally defaulted." (Id. at 5.) Nevertheless, Magistrate Judge Hart recommended that the Amended Petition be dismissed without prejudice for the following reason:

> This case is in an unusual procedural posture, with part of Caple's state proceedings still pending. Moreover, the exhaustion and procedural default issues raised by the claim regarding the Western Union receipt were not addressed by the Commonwealth. Nor has Caple thoroughly explored the exceptions to these rules. Given this unresolved state of affairs, I am reluctant to deprive Caple of his only chance to file a habeas corpus petition.

(Id.)

On December 12, 2017, Caple filed a Reply to the Report and Recommendation. (Doc. No. 12.) In the Reply, he raised a single Objection: that the Magistrate Judge failed to acknowledge that the Amended Petition contained not one, but two grounds for relief. (Id.) Indeed, upon review of the first R&R, this Court discovered that the Magistrate Judge inadvertently missed Caple's

---

[9] Making this distinction was necessary because Respondents misunderstood Caple's Fourth Amendment claim and only made arguments about the warrantless entry issue, which was not raised in the Amended Petition. (See Doc. No. 9.)

ineffective assistance of counsel claim, which was added in the Amended Petition. For that reason, the Court recommitted the case back to Magistrate Judge Hart for a second Report and Recommendation that addressed both of Caple's claims. (Doc. Nos. 19, 20.)

## 2. The Second Report and Recommendation

On October 10, 2018, Magistrate Judge Hart issued a second Report and Recommendation ("R&R"), recommending that the Court dismiss Caple's ineffective assistance of counsel claim.[10] (Doc. No. 22.) In the second R&R, the Magistrate Judge found that Caple's claim that Mr. Wile was ineffective on direct appeal for failing to brief the Western Union receipt issue was unexhausted and procedurally defaulted because Caple only raised the claim in his initial PCRA petition—he never appealed the issue on collateral review. Further, even if the procedural default could be excused, Magistrate Judge Hart held that the ineffective assistance of counsel claim against Mr. Wile lacked merit. (Id. at 1.)

On October 31, 2018, Caple filed a Reply to the second R&R, in which he raised two Objections. (Doc. No. 23.) First, Caple argues that the Magistrate Judge "ignore[d] [the fact that] Petitioner is clearly arguing that both Appeal Attorneys Wile and McMahon were proven ineffective." (Id. at 4.) He claims that the second R&R only addresses his ineffective assistance of counsel claim regarding Mr. Wile's representation on direct appeal, and fails to address his ineffective assistance of counsel claim regarding Ms. McMahon's representation on appeal of the Post-Sentencing Motion.[11] (Id. at 4-6.)

---

[10] The Second Report and Recommendation does not repeat the Magistrate Judge's analysis on Caple's Fourth Amendment Western Union receipt claim. It only addresses Caple's ineffective assistance of counsel claim. (See Doc. No. 22.)

[11] Caple also raised this issue in a Motion of Notice to the Court, which was filed on September 17, 2018—more than three weeks before the second Report and Recommendation was issued. In the Motion of Notice, Caple submitted that the Magistrate Judge "completely missed the fact

Second, Caple argues that his ineffective assistance of counsel claim regarding Mr. Wile's failure to brief the Western Union receipt issue is not procedurally defaulted because the state trial court never issued a final order on the claim on collateral review. The trial court's order only addressed Caple's claim that Mr. Wile was ineffective for failing to request reargument or reconsideration of the warrantless entry in the Superior Court, which Caple understood to mean that the Western Union ineffective assistance of counsel claim was unresolved. (Id. at 6-9.)

### 3. Caple's Motions for Leave to Amend the Amended Petition for Writ of Habeas Corpus

On November 19, 2018, Caple filed a Motion for Leave to Amend the Amended Petition. (Doc. No. 25.) He proposes to add a new claim regarding the warrantless entry of Room 215, which could not have been raised previously because it was still pending in the Pennsylvania Supreme Court when he filed his Amended Petition for Writ of Habeas Corpus. In the proposed amended petition attached to the Motion for Leave to Amend, Caple asserts three claims for relief: (1) that the Superior Court erred in affirming the trial court's decision to deny his motion to suppress evidence from the initial warrantless entry of Room 215; (2) that the trial court erred by denying his motion to suppress the Western Union receipt; and (3) that Mr. Wile was ineffective on direct appeal, and that McMahon was ineffective on appeal of the Post-Sentence Motion. (Doc. No. 25-1 at 8-12.)

On November 28, 2018, Caple filed another Motion for Leave to Amend the Amended Petition. (Doc. No. 26.) Attached to this Motion was a proposed amended memorandum of issue and authority in support of the proposed amended petition. (Id. at 3.) In the proposed amended memorandum, Caple framed his claims in three questions:

---

[that] Petitioner is arguing Timothy Wile and Attorney Erin Lentz-McMahon were both proven ineffective." (Doc. No. 21.)

1. Did the Superior Court overlook or misapprehend facts of record material to the outcome of the case and in doing so has rendered a decision in conflict with with [sic] other decisions of the appellate courts on the same question, and thus the Superior Court overlooked or misapprehended (as by misquotation of text or misstatement of result) of controlling or direct[] relevant federal authority?

2. Did trial court commit constitutional error of federal law and/or abuse its discretion by denying Petitioner's Motion to Suppress the receipt seized from Room 215 and used to identify the Petitioner, where the officer clearly admitted on the record and through other evidence that the name on the receipt was not immediately apparent as required under the plain view doctrine?

3. Also did Petitioner's attorneys Timothy Wile and Erin Lentz-McMahon, [sic] ineffective assistance of counsel prejudice him from having a full and fair opportunity to litigate the receipt suppression issue by depriving him of his constitutional right to appeal said issue?

(Id.)

###      4.      Caple's Motion to Stay the Proceedings

On November 30, 2018, Caple filed in this Court a Motion Requesting a Final Order for the PCRA Issue that was Ignored.[12]  (Doc. No. 27.)  To reiterate, in his Amended PCRA Petition, Caple made two arguments: (1) that Mr. Wile was ineffective for failing to brief the Western Union receipt issue on direct appeal; and (2) that Mr. Wile was ineffective for failing to request reargument or reconsideration after the Superior Court affirmed the trial court's decision to deny Caple's motion to suppress evidence from the initial warrantless entry.  (Doc. No. 17-13 ¶ 38.)  After a hearing, the state trial court issued an order that granted relief on the second issue and allowed Caple to request reargument of the warrantless entry issue in the Superior Court.  The order was silent on the Western Union receipt issue.  As Caple understood it, the fact that the order did not mention the Western Union receipt issue meant that the court had not issued a final order on that claim, and that he could not appeal it.

---

[12]  Caple also filed the Motion Requesting Final Order with the state trial court.  (See Doc. No. 28.)

In the Motion Requesting Final Order, Caple asked the state trial court to issue a final order as to whether Mr. Wile was ineffective for failing to brief the Western Union receipt issue on direct appeal. (Id.) On December 24, 2018, the state trial court acquiesced and issued a final order on the Western Union receipt suppression issue, which was raised in his PCRA petition:

> AND NOW, this 24th day of December 2018, upon consideration of Defendant's "Motion Requesting a Final Order for the PCRA Issue That Was Ignored," it is hereby ORDERED and DECREED that the balance of Defendant's PCRA claims in his amended petition filed on December 15, 2016 and argued on April 25, 2017 are DENIED. The Defendant did not receive ineffective assistance of counsel. Patrick McMenamin, Jr., Esq. remains attorney of record and shall represent the Defendant in any further proceedings on this matter.

(Doc. No. 28 at 6.)

On January 11, 2019, filed a Motion Requesting Leave for a Stay in Abeyance So Petitioner May Exhaust Some Issues. (Doc. No. 28.) In support of his Motion, he wrote the following:

> WHEREFORE, based on the facts that [J]udge Hart's reasoning for not granting habeas relief is because the Petitioner did not exhaust State remedies, and that the Trial Judge O'Neill[] finally issued the much needed final order after all of this time, clearly proves that this Honorable Court should grant Petitioner leave for Stay In Abeyance, to exhaust State remedies, and return to Federal Court for review of a perfected petition.

(Id. at 5.) Respondents did not file a response.

## III.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs habeas petitions, like the one before the Court. Under Section 2254 of the AEDPA, "a district court shall entertain an application for writ of habeas corpus [filed on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on

petitions for post-conviction relief. See 28 U.S.C. § 363(b)(1)(B); E.D. Pa. Civ. R. 72.1. Any party may file objections in response to the magistrate judge's report and recommendation. Id. at § 363(b)(1)(C). Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge. The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions." Id. "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also 28 U.S.C. § 636(b).

On habeas review, a federal court must determine whether the state court's adjudication of the claims raised was (1) contrary to, or an unreasonable application of, clearly established law, or (2) based on an unreasonable determination of the facts in light of the evidence presented . . . ." 28 U.S.C. § 2254(d). A state court's decision is "contrary to . . . clearly established" federal law where the state court applies a rule of law that differs from the governing rule set forth in Supreme Court precedent, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A decision is an "unreasonable application" of clearly established law where the state court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75 (quoting Williams, 529 U.S. at 413). The "unreasonable application" clause requires more than an incorrect or erroneous state court decision. Id. Rather, the application of clearly established law must be "objectively unreasonable." Id.

Under the AEDPA, on habeas review, a federal court must presume that factual findings of state trial and appellate courts are correct. Stevens v. Del. Corr. Ctr., 295 F.3d 361, 368 (3d Cir. 2002). A petitioner can only overcome this presumption by producing clear and convincing evidence to the contrary. Burt v. Titlow, 571 U.S. 12, 18 (2013). "AEDPA requires a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." Id. at 20 (quoting Harrington v. Richter, 562 U.S. 86, 104 (2011)).

A federal court must construe a prisoner's pro se pleading liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). A "pro se complaint, however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); see also Higgs v. Att'y. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011) ("[W]hen presented with a pro se litigant, we 'have a special obligation to construe his complaint liberally.'") (quoting United States v. Miller, 197 F.3d 644, 648 (3d Cir. 1999)).

## IV. ANALYSIS

Several matters are currently pending before the Court. Of these, the Court will first address Caple's Objections to the second Report & Recommendation. To recap, Caple makes two Objections. First, he argues that the second R&R "missed the fact [that] Petitioner is and has always been arguing that Attorneys Timothy P. Wile and Erin Lentz-McMahon were both proven to be ineffective on appeal." (Doc. No. 23 at 4.) Second, Caple objects to Magistrate Judge Hart's finding that his Fourth Amendment Western Union receipt claim and his Sixth Amendment ineffective assistance of counsel claim are procedurally defaulted. (Id. at 6.)

For clarity, the Court will structure its analysis of Caple's Objections around the claims made in the Amended Petition. Thus, the Court will first evaluate Caple's claim that the state trial

court erred by denying his motion to suppress the Western Union receipt. Second, the Court will turn to Caple's claim that Mr. Wile, his attorney on direct appeal, was ineffective for failing to raise the Western Union receipt issue in the appellate brief to the Pennsylvania Superior Court. The Court will then address Caple's Motion to Stay, as it concerns Caple's request to return to state court to exhaust the claim that Mr. Wile was ineffective on direct appeal. Third, the Court will address Caple's claim that Ms. McMahon, his attorney on appeal of the Post-Sentencing Motion, was ineffective for failing to raise the Western Union receipt issue.

Finally, after evaluating the claims set forth in Caple's Amended Petition for Writ of Habeas Corpus, the Court will turn to Caple's Motions for Leave to Amend the Amended Petition, wherein he asks the Court to permit him to add a new claim regarding the warrantless entry of Room 215. (Doc. Nos. 25, 26.)

### A. The Court will Deny Caple's Claim that the State Trial Court Erred by Denying His Motion to Suppress the Western Union Receipt

In the Amended Memorandum of Issue and Authority filed in support of his Amended Petition, Caple framed his first ground for relief in the form of the following question:

> Did the trial court commit constitutional error of law and/or abuse its discretion by denying Petitioner's Motion to Suppress the receipt seized from Room 215 and used to identify the Petitioner, where the officer clearly admitted on the record and through other evidence that the name on the receipt was not immediately apparent as required under the plain view doctrine?

(Doc. No. 8 at 1.)

Magistrate Judge Hart addressed this question in the first R&R. There, he found that that the Western Union receipt issue was procedurally defaulted and non-cognizable. However, Magistrate Judge Hart noted that the warrantless entry issue, which was not raised in the Amended Petition, was still pending before the Pennsylvania Supreme Court. As a result, the Magistrate Judge recommended that the Amended Petition be dismissed without prejudice so that Caple could

file a subsequent habeas petition that sought review of the warrantless entry issue.  (See Doc. No. 11.)  Caple objects to the Magistrate Judge's determination that this claim is procedurally defaulted and non-cognizable.  In this section, the Court will address each issue in turn.

### 1.    The Western Union Receipt Claim is Procedurally Defaulted

Caple claims that he is entitled to relief because his state court conviction was "obtained by use of evidence gained pursuant to an unconstitutional search & seizure of a receipt from a motel."[13]  (Doc. No. 7 at 1.)  He contends that the evidence on the record proves that seizure of the Western Union receipt from the backpack in Room 215 violated the scope of the warrant and that the seizure does not fall within an exception to the Fourth Amendment warrant requirement because the receipt was not "immediately apparent as required under the plain view doctrine." (Id.)  In short, Caple claims that the trial court violated his Fourth Amendment rights by admitting the Western Union receipt.

As noted above, Caple's direct appeal attorneys, Montgomery County Public Defenders Christa A. Miller and Timothy P. Wile, raised this issue in the Rule 1925(b) Statement to the trial court, but Mr. Wile later decided to abandon the issue for strategic reasons and did not include it in the appellate brief to the Pennsylvania Superior Court.  As a result, the Superior Court did not

---

[13]  As noted supra, there are two suppression issues in this case: (1) the warrantless entry issue that was not raised in the Amended Petition, but that was still pending before the Pennsylvania Supreme Court when the first R&R was issued; and (2) the Western Union receipt issue that was raised in the Amended Petition.  From the Response in Opposition to the Amended Petition, it appears that Respondents were under the misapprehension that Caple only raised the warrantless entry issue in the Amended Petition, and not the Western Union receipt issue. Indeed, in the Response, Respondents stress that the Court cannot review the warrantless entry issue because, at the time, it was still pending before the Pennsylvania Supreme Court.  (Doc. No. 9 at 6.)  Magistrate Judge Hart pointed out Respondents' mistake in the first R&R, which was issued over a year ago (Doc. No. 11), but Respondents never filed a subsequent brief to address the Western Union receipt issue.

review the issue because under Pennsylvania Rule of Appellate Procedure 2116, an appellate court will not consider an issue "unless it is stated in the statement of questions involved [in the appellate brief] or is fairly suggested thereby." Pa. R. App. P. 1925(b).

Under the AEDPA, "a district court ordinarily cannot grant a petition for writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court." Houck v. Stickman, 625 F.3d 88, 93 (3d Cir. 2010) (citing 28 U.S.C. § 2254(b)). The exhaustion requirement is animated by the principle of comity—a state court must be given the opportunity to address an issue before a federal court intervenes. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).

To exhaust a claim, a Section 2254 petitioner must first "fairly present" it to the highest state court. A petitioner is said to have fairly presented a claim when he asserts "the factual and legal grounds of the federal claim with sufficient precision to give the state court notice." Adams v. Kyler, No. 01-0627, 2002 WL 1896385, at *2 (E.D. Pa. Aug. 15, 2002) (citing Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001)). If a petitioner has not exhausted his federal claim in state court, a federal habeas court cannot review it.

Where, as here, a petitioner presents a federal claim to the state court, but the state court does not review it on procedural grounds, the claim is considered procedurally defaulted. If a claim is procedurally defaulted, it cannot be said to be fairly presented to the state court. Thus, procedurally defaulted claims are considered unexhausted and are generally precluded from federal habeas review. Kyler, 2002 WL 1896385, at *2 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)).

As explained above, Caple raised the Western Union receipt issue in the Rule 1925(b) Statement, but did not address it in his appellate brief. Pursuant to Rule 2116, which is a state

appellate procedural rule, the Pennsylvania Superior Court did not address the issue and considered it waived. See Commonwealth v. Caple, 121 A.3d 511 (Pa. Super. Ct. 2015). As a result, in the first R&R, Magistrate Judge Hart found that the Western Union receipt issue was procedurally defaulted and unexhausted. (Doc. No. 11 at 5); see also Charlton v. Wakefield, No. 07-200, 2010 WL 724521, at *10 (W.D. Pa. March 1, 2010) (holding that a claim which is raised in a Rule 1925(b) Statement, but not fairly presented in the appellate brief is procedurally defaulted). The Court agrees.

### 2. The Court will not Excuse the Procedural Default of the Western Union Receipt Claim

A federal court can review a procedurally defaulted habeas claim if the "prisoner can demonstrate cause for default and actual prejudice as a result of alleged violation of federal law, or demonstrate that failure to consider claims will result in fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). To demonstrate cause and prejudice, the petitioner must show some objective factor external to the defense that impeded counsel's efforts to comply with the state procedural rule at issue. Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004) (quoting Murray, 477 U.S. at 488). To establish a fundamental miscarriage of justice, the petitioner must demonstrate actual innocence. Schlup v. Delo, 513 U.S. 298, 324-26 (1995).

"[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court" provides cause to excuse procedural default of a habeas claim. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986)). Not just any deficiency in counsel's performance will do—"the assistance must have been ineffective as to violate the Federal Constitution." Id. Thus, to constitute cause, the ineffectiveness must violate the Sixth Amendment. Additionally, the ineffective assistance of

counsel claim must have been presented to the state courts as an independent claim before it can be used to establish cause for a procedural default on habeas review.  Id.

Here, Caple argues that Mr. Wile "proved to be ineffective by . . . abandon[ing] the receipt issue by not briefing said issue."  (Doc. No. 8 at 4.)  Liberally construed, Caple's argument implies that the procedural default of the Western Union receipt claim should be excused because Mr. Wile was ineffective in failing to raise the issue in the appellate brief to the Pennsylvania Superior Court.  Caple does not advance any arguments that failure to review this issue on habeas review would constitute a fundamental miscarriage of justice.  That is, he does not argue that he is actually innocent.

The Court will first address whether Mr. Wile's failure to raise the issue in the appellate brief violates the Sixth Amendment.  In Strickland v. Washington, the United States Supreme Court announced a two-prong test to evaluate whether a defendant was deprived of his right to counsel as guaranteed by the Sixth Amendment.  466 U.S. 668 (1984).  Under Strickland, a defendant who raises claims of ineffective assistance of counsel must prove that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 688, 694.

To meet the first prong of the Strickland test, a defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In assessing counsel's performance, the reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.  Moreover, there exists a "strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. To overcome the presumption of sound trial strategy, a defendant "must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005).

To meet the second prong of the Strickland test, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. Id.

With respect to the first prong of the Strickland test, Caple has not established that Mr. Wile's representation on direct appeal fell below the objective standard of reasonableness or that Mr. Wile "made errors so serious" that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." See id. at 687. As noted above, in his PCRA petition, Caple raised the issue of whether Mr. Wile was ineffective for failing to brief the Western Union receipt issue on direct appeal. (Doc. No. 17-13 ¶ 38.) Mr. Wile testified about his decision at the PCRA hearing held in state court on April 25, 2017. Specifically, he told the court that he chose not to brief the issue because he thought the warrantless entry issue had a stronger chance of success on appeal:

| | |
|---|---|
| Counsel: | Do weaker issues dilute the potency of stronger issues in the context of appeals? |
| Mr. Wile: | Absolutely. |
| Counsel: | So you don't want to raise the weaker issues with a potentially meritorious issue? |

| | |
|---|---|
| Mr. Wile: | Well it depends how weak the issue is . . . . [I]f the issue isn't close or isn't nearly as strong, you want the Court to focus on the major issue you want to bring, and that's the one most likely to afford relief. |
| Counsel: | Would you consider the remedy of an appeal when choosing the issues? So the remedy that the Court might craft for a specific issue, do you consider that? |
| Mr. Wile: | Absolutely . . . . [I]n this case, we had a challenge to the initial entry into the motel room. We argued that it was unconstitutional, that there wasn't an exigent circumstance for the police officer to enter that motel room at the time. Had we prevailed on that, everything that they found in that motel room would have been tossed out, and there would have been no need to go after the search warrant. |
| | On the other hand, the issue with the receipt and the business card, it wasn't as clear-cut. I don't think it was that strong that even if we would have lost on the first, they would have granted us relief on the second. The trial court opinion I think handled it pretty well in my research, didn't lead me to believe that the issue would have granted Mr. Caple any relief. |

(Doc. No. 17-6 at 26-27.) Then, Mr. Wile testified about the effect of the Western Union receipt

on the Commonwealth's case against Caple at trial:

| | |
|---|---|
| Counsel: | So having all that as a backdrop, was there a reason that you didn't raise any claim related to the money order receipt or the business cards in your appellate brief? |
| Mr. Wile: | I didn't believe that the argument that the police had exceeded the scope of the search warrant was that viable. I reached that conclusion based upon again the trial court handling of that issue and my own independent research. |
| Counsel: | What remedy would the Superior Court have crafted for the issue? |
| Mr. Wile: | If the Superior Court would have agreed that that was beyond the scope of the search warrant, they probably would have excluded the business card and the money order received. |
| Counsel: | Would that have ended the Commonwealth's case? |

| | |
|---|---|
| Mr. Wile: | . . . I think it might have given the Commonwealth a little bit harder burden, but I don't think it would have done anything close to getting the original entry knocked out. |

*** 

| | |
|---|---|
| Counsel: | And did you have a fear that raising the lesser issue, the receipt and the money order and business cards—did you have a fear that that would detract from your meritorious issues? |
| Mr. Wile: | I don't know if detract is the accurate word. I think it would divert the Court's attention to what I felt was the key issue in the case, which was the illegal entry . . . . I wanted to keep the Superior Court focused on that rather than having them divide their focus in an issue that is not as compelling in my mind and would not have afforded my client the relief that we wanted, which was to get all the evidence tossed out and not just those two items. |

(Id. at 29-31.)   At the time he represented Caple on the direct appeal, Mr. Wile was an Assistant Public Defender with the Montgomery County Public Defender's Office, where he served as Chief of the Appellate Division.  According to his testimony, Mr. Wile had over thirty years of appellate experience and had litigated thousands of appeals before taking Caple's case.  (Id. at 23.)

As evidenced by Mr. Wile's testimony, the omission of the Western Union receipt issue from the appellate brief was not inadvertent; rather, it was a strategic decision made by a seasoned appellate attorney.  His strategy has a strong foundation in warnings issued by Pennsylvania appellate courts that a party appealing plethora of issues runs the risk of having them discounted.  For example, in Kenis v. Perini, the Pennsylvania Superior Court explained the following:

When . . . an appellant's brief contains 10 or 12 points, a presumption arises that there is no merit to any of them.  I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy.  Appellate advocacy is measured by effectiveness, not loquaciousness.

682 A.2d 845, 847 n.3 (Pa. Super. Ct. 1996).

Further, Mr. Wile's opinion that the Western Union receipt issue was legally deficient is supported by law. In Harris v. United States, the United States Supreme Court held that "objects falling within the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced as evidence." 390 U.S. 234, 236 (1968). The plain view doctrine, which serves as an exception to the Fourth Amendment's warrant requirement, only requires that (1) there was prior justification for the government's intrusion into an otherwise protected area; and (2) the incriminating nature of the evidence was immediately apparent. Coolidge v. New Hampshire, 403 U.S. 443, 466-68 (1971). Based on this doctrine, Mr. Wile determined that the Western Union receipt issue was weak and could dilute the potency of the warrantless entry issue, which was raised in the appellate brief. Indeed, the trial court also relied on the plain view doctrine when it denied Caple's suppression motion. In the 1925(a) Opinion that responded to Caple's direct appeal 1925(b) Statement, the trial court reasoned as follows:

> The search warrant application for room 215 identified the items to be searched for and seized as: Drug paraphernalia, specifically Crack Cocaine smoking pipes, Crack Cocaine, and drug packaging materials. The search warrant application was supported by an Affidavit of Probable Cause prepared by Officer Gallagher. Then Affidavit asserted that the items to be searched for would be evidence in plain view and any other evidence that is concealed, showing the drug activity that was occurring in room 215.

> ***

> Although the back pack itself may not be immediately incriminating, officers are permitted to search containers or other secreted items within the designated area. See Commonwealth v. Reese, 549 A.2d 909 (Pa. 1988) (Search of visitor's jacket hanging over back of chair in apartment searched pursuant to a valid warrant authorizing search for cocaine, other controlled substances, and any paraphernalia and records associated with distribution of controlled substances, was justified where jacket was not being worn by visitor at time of search, and where jacket was plausible repository for object of search.) Thus, the back pack found in room 215 was lawfully seized, since it was a plausible source that might contain evidence of drug activity.

Finally, the money order was lawfully seized under the plain view doctrine. Although the search warrant referred to drug paraphernalia and drugs, the officers seized the money order receipt because it identified "Frank Caple" as the sender. Accordingly, we found that the money order was subject to seizure under the plain view doctrine since the officers, while in the process of legally searching for narcotics, discovered it and it served to show that the defendant occupied the premises. Moreover, since the officers were unaware of who actually rented room 215, the documents, readily identifiable on its face as belonging to the Defendant, [were] directly relevant to establishing his connection with the seized narcotics. As such, this court properly denied Defendant's Motion to Suppress Evidence.

(Doc. No. 17-50 at 12-13.)

For these reasons, Caple has not satisfied the first prong of the Strickland test. He has not shown that Mr. Wile's representation fell below an objective standard or that it fell outside the wide range of reasonable professional assistance. Nor has he overcome the presumption that Mr. Wile's decision to omit the Western Union receipt issue in the appellate brief was a sound strategic decision.

Moreover, Caple has not met the second prong of the Strickland test, which requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. As explained above, the plain view doctrine supports the introduction of the Western Union receipt. Thus, even if Mr. Wile had included the claim in the appellate brief, it is highly unlikely that the Superior Court would have granted relief and reversed the trial court on this issue. Further, even if the Superior Court had ordered the trial court to exclude the receipt and re-try the case, it is doubtful that the exclusion would have ended the government's case against Caple. (See Doc. No. 17-6 at 29-31.)

As a result, Caple has not demonstrated that but for Mr. Wile's decision to omit the Western Union receipt issue on direct appeal, the result of the appeal or the trial would have been different. Mr. Wile's decision was not the product of ineffective assistance of counsel; it was an exercise of

his professional judgment. Consequently, Caple has not established that Mr. Wile's actions violated the Sixth Amendment.

Additionally, to constitute grounds to excuse procedural default, an ineffective assistance of counsel claim must have been presented to the state courts as an independent claim before it can be used to establish cause for a procedural default. Edwards, 529 U.S. at 451. However, because Caple has failed to demonstrate a Sixth Amendment violation, it is not necessary to determine whether he exhausted this claim in state court at this point in the Court's analysis. It will be addressed in a subsequent section.

In sum, the Western Union receipt claim is procedurally defaulted because it was not raised in the appellate brief to the Pennsylvania Superior Court. Despite Caple's argument that the procedural default was caused by Mr. Wile's ineffective assistance of counsel, the Court will not excuse the default because Caple has not established a violation of the Sixth Amendment.

### 3. The Western Union Receipt Claim is Non-Cognizable

Even if the Western Union receipt issue was not procedurally defaulted, Magistrate Judge Hart found that "it is unlikely that this claim would be deemed cognizable." (Doc. No. 11 at 6.) As explained previously, Caple sought to exclude evidence of the Western Union receipt through a pretrial suppression motion brought pursuant to the Fourth Amendment. The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, paper, and effects, against reasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The exclusionary rule, which is a judicially created means of effectuating the rights secured by the Fourth Amendment, prohibits the introduction at criminal trial of evidence obtained in violation of the Fourth Amendment. See Pennsylvania B. of Prob. & Parole v. Scott, 524 U.S. 357, 359 (1998). However, claims challenging the admission of evidence in violation of the

Fourth Amendment are not subject to habeas review. The Third Circuit Court of Appeals has explained the following:

> In Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed. 2d 1067 (1976), the Supreme Court examined the nature of the exclusionary rule, which it characterized as a "judicially created means of effectuating the rights secured by the Fourth Amendment" and balanced its utility as a deterrent against the risk of excluding trustworthy evidence and thus "deflect[ing] the truthfinding process." Id. at 482, 490, 96 S.Ct. 3037. Finding that, as to collateral review, the costs of the exclusionary rule outweighed the benefits of its application, the Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494, 96 S.Ct. 3037. While the federal courts are not thus deprived of jurisdiction to hear the claim, they are—for prudential reasons—restricted in their application of the exclusionary rule. Id. at 494 n.37, 96 S.Ct. 3037.

Marshall v. Hendricks, 307 F.3d 36, 81 (3d Cir. 2002). Thus, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494 (footnote omitted).

An "opportunity for full and fair litigation" of a Fourth Amendment claim in state court requires that no "structural defect in the system itself prevented [the petitioner's claim from being heard." Marshall, 307 F.3d at 82; see also Boyd v. Mintz, 631 F.2d 247, 250-51 (3d Cir. 1980) ("where the state provides the process but in fact defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, (federal [habeas] relief) may still be warranted."). Significantly, "[a]n erroneous or summary resolution by the state court of a Fourth Amendment claim does not overcome [Stone's] bar." Id. "A petitioner has a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism." Keys v. Rozum, No. 10-5099, 2012 WL 3113992, at *2 (E.D. Pa. June 25, 2012)

(quoting <u>Whitfield v. Phelps</u>, No. 06-137, 2009 WL 700234, at *5 (D. Del. Mar. 16, 2009)); <u>see also</u> <u>Cullison v. Wolfe</u>, No. 04-5001, 2005 WL 2644997, at *4 (E.D. Pa. Oct. 13, 2005) ("Although Petitioner did not file a pre-trial motion questioning the validity of his arrest in this case, such a failure does not compel a finding that the trial court denied Petitioner a full and fair opportunity to litigate a Fourth Amendment claim."), <u>adopted by</u>, No. 04-5001, 2005 WL 3120276, at *1 (E.D. Pa. Nov. 21, 2005).

Here, an independent review of the record reveals that Caple was provided a full and fair opportunity to litigate his Fourth Amendment claim in state court. The record shows that Caple raised his Fourth Amendment claim in an omnibus pretrial motion seeking suppression of, among other things, the Western Union receipt found in a backpack in Room 215. After a lengthy evidentiary hearing, the state trial court denied the motion. Caple argues that "[t]he evidence of record clearly proves the Petitioner's Attorney's ineffective assistance prejudiced him from having a full and fair opportunity to litigate the receipt suppression issue by depriving him of his Constitutional right to appeal." (Doc. No. 8 at 8.) But this argument is insufficient to clear the lofty hurdle imposed by <u>Stone</u>. As noted above, a petitioner has a full and fair opportunity to litigate a Fourth Amendment claim so long as "the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism." <u>Keys</u>, 2012 WL 3113992, at *2. Here, there was a mechanism in place to seek the suppression of illegally seized evidence. Thus, it is irrelevant that Caple did not take advantage of the mechanism by raising the issue on direct appeal.

Moreover, Caple's dissatisfaction with the outcome of the state court suppression hearing does not permit the Court to review his claim. Mere disagreement with a state court's decision does not overcome the <u>Stone</u> bar against federal collateral review of Fourth Amendment claims.

See Marshall, 307 F.3d at 82 ("Marshall is at most alleging that the Fourth Amendment claims were decided incorrectly or incompletely by the New Jersey courts, allegations which are insufficient to surmount the Stone bar."). Accordingly, the Court cannot review this claim and it will therefore be dismissed.[14]

### B. The Court will Deny Caple's Ineffective Assistance of Counsel Claim

Second, Caple claims that he is entitled to relief because he received ineffective assistance of counsel. In the Amended Memorandum of Issue and Authority, he frames this ground for relief as follows:

> Also did Petitioner's Attorney's ineffective assistance clearly prejudice him from having a full and fair opportunity to really litigate the receipt suppression issue by depriving him of his constitutional right to appeal said issue?

(Doc. No. 8 at 1.) In the Amended Petition, Caple stressed that this claim referred to both Mr. Wile's representation on direct appeal and Ms. McMahon's representation on appeal of the Post-Sentence Motion:

> Attorney Miller[] raised [the] receipt suppression issue in 1925(b) statement . . . but Attorney Wile failed to brief the issue. Also Attorney Lentz-McMahon did not properly raise the issue in Second Appeal. Plus (PCRA) court never addressed issue.

(Doc. No. 7 at 1.)

Magistrate Judge Hart addressed Caple's ineffective assistance of counsel claim in the second R&R. There, the Magistrate Judge found that Caple's claim regarding Mr. Wile was procedurally defaulted and without merit. To this point, Caple argues that because the state trial

---

[14] In the first R&R, Magistrate Judge Hart recommended that the Court deny this claim without prejudice because "where a deprivation of fundamental fairness has not been briefed by either party, it would be unfair to decide unequivocally at this stage that Caple could never show it." (Doc. No. 11 at 6.) However, the Magistrate Judge inadvertently missed Caple's argument in the Amended Memorandum of Issues and Authority, wherein he contends that he lacked a full and fair opportunity to litigate the Western Union receipt issue on direct appeal. (See Doc. No. 8 at 8.)

court issued a final order on this issue on December 24, 2018, this claim can now be appealed in state court and is not procedurally defaulted. In a separate Motion, Caple asks the Court to stay these proceedings while he exhausts this claim in state court. (See Doc. No. 28.)

Additionally, as stressed by Caple in his Objections to the second R&R, the Magistrate Judge did not address Caple's claim regarding Ms. McMahon. (See Doc. No. 23.) Here, the Court will first evaluate Caple's claim that Mr. Wile was ineffective in his representation of him on direct appeal. Second, the Court will assess Caple's claim that Ms. McMahon was ineffective in her representation of him on the appeal of the Post-Sentence Motion.

> **1.** **Caple's Claim that Mr. Wile was Ineffective is not Procedurally Defaulted, but the Court will not Stay the Proceedings Because the Claim is Meritless**

In the Amended Petition for Writ of Habeas Corpus, Caple argues that Mr. Wile was ineffective for failing to raise the Western Union receipt issue on appeal to the Pennsylvania Superior Court. (Doc. No. 8 at 9.) As noted above, Caple raised two issues in his Amended PCRA Petition: (1) that Mr. Wile was ineffective for failing to include the Western Union receipt issue in the appellate brief; and (2) that Mr. Wile was ineffective for failing to request reargument or reconsideration of the warrantless entry issue in the Pennsylvania Superior Court. (Doc. No. 17-13 ¶ 38.) After a hearing on the Amended PCRA Petition, the trial court issued a one-paragraph order that permitted Caple to request reargument or reconsideration of the warrantless entry issue in the Superior Court. The order was silent on the Western Union receipt issue. (Doc. No. 17-5.) Caple took the trial court's silence to mean that it had not issued a final order on the issue. As a result, he did not appeal the trial court's decision to the Superior Court.

The Magistrate Judge addressed this claim in the second R&R. As an initial matter, Magistrate Judge Hart found that the claim was unexhausted because it was only raised before the

trial court on PCRA review, but was never appealed to the Pennsylvania Superior Court or the Pennsylvania Supreme Court. (Doc. No. 7 at 12.) The Magistrate Judge then proceeded to find that the claim was also procedurally defaulted because a state procedural rule would prevent Caple from exhausting the claim:

> Further, Caple cannot return to the Commonwealth to exhaust his claim before the higher courts. Even if a second PCRA petition could be considered timely, this particular claim would be dismissed under 42 Pa. C.S.A. §9543(a)(3), which provides that a PCRA petition can contain only claims that have not been previously litigated. The Western Union receipt claim was clearly litigated before the PCRA court at the trial level. As above, it was argued at some length.
>
> Because an independent and adequate state rule—here, 42 Pa. C.S.A. §9543(a)(3)—precludes Caple from exhausting his claim, the claim must be considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 729 (1991).[15]

(Doc. No. 22 at 8.)

Next, the Magistrate Judge acknowledged that procedural default can be excused where a petitioner shows (1) cause and prejudice, or (2) a miscarriage of justice. (Id.) On that point, Magistrate Judge found that the lack of clarity in the PCRA order cannot excuse the default here:

> The lack of clarity in the PCRA court's order is probably not, in itself, cause which can excuse Caple's default. Even thought the PCRA court did not explain its disposition of the Western Union receipt issue, it was evident even to a lay person that no relief was granted on the issue. Clearly, action by Caple of some kind was necessary if relief on that issue was still sought. If the issue could not be appealed on the court's April 26, 2017[] order, he could have sought reconsideration of that claim, or in some other way sought clarification from the PCRA court of its disposition of the claim. The would have permitted Caple to exhaust his claim.

(Id. at 8-9.)

---

[15] To be eligible for relief under the PCRA, "the petitioner must plead and prove by a preponderance of the evidence . . . [t]hat the allegation of error has not been previously litigated or waived." 42 Pa. C.S.A. §9543(a)(3)

Significantly, the state of affairs has changed since Magistrate Judge Hart issued the second R&R. As noted previously, on December 24, 2018, the Court of Common Pleas for Montgomery County issued a final order on Caple's claim that Mr. Wile was ineffective for failing to brief the Western Union issue on appeal:

> AND NOW, this 24th day of December 2018, upon consideration of Defendant's "Motion Requesting a Final Order for the PCRA Issue That Was Ignored," it is hereby ORDERED and DECREED that the balance of Defendant's PCRA claims in his amended petition filed on December 15, 2016 and argued on April 25, 2017 are DENIED. The Defendant did not receive ineffective assistance of counsel. Patrick McMenamin, Jr., Esq. remains attorney of record and shall represent the Defendant in any further proceedings in this matter.

(Doc. No. 28 at 6.) Now, considering the final order issued by the state trial court, it appears that the claim that Mr. Wile was ineffective is no longer procedurally defaulted. No state procedural rule prevents or prevented Caple from exhausting this claim in state court.

Typically, a federal court must dismiss without prejudice a habeas petition that contains an unexhausted claim. See Rose v. Lundy, 455 U.S. 509, 522 (1982). Alternatively, a district court may stay and abey a mixed petition (i.e. one that contains both exhausted and unexhausted claims) while the petitioner presents the unexhausted claims in state court. This option is particularly appealing where, as here, a petitioner's second habeas petition might be time-barred upon returning to federal court. See Rhines v. Weber, 544 U.S. 269, 275 (2005) ("If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under Lundy after the limitations period has expired, this will likely mean the termination of any federal review."); Crews v. Horn, 360 F.3d 146, 154 (3d Cir. 2004) ("when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action"). However, because granting a stay "effectively excuses a petitioner's failure to present his claims first to the state courts," a stay and abeyance is only available in the following circumstances: (1) where the

petitioner has "good cause" for failing to exhaust the claim; (2) where the unexhausted claims are not "plainly meritless;" and (3) where the petitioner has not engaged in "intentionally dilatory litigation tactics." Rhines, 544 U.S. at 277-78.

Here, Caple asks the Court to stay the present case because he seeks to return to state court and exhaust the issue of whether Mr. Wile was ineffective for not failing to raise the Western Union receipt issue on direct appeal. As an initial matter, Caple has good cause for failing to exhaust this claim. Because the state trial court was silent on PCRA review on the issue of whether Mr. Wile was ineffective for failing to brief the Western Union issue, Caple thought that the trial court had not issued a final order on the claim. Although an attorney would know that the trial court's silence constituted a denial of relief, it is understandable that Caple, who has no legal training, might take the silence to mean that the issue had not been resolved. Further, the fact that the trial court ultimately granted Caple's request for a final order strengthens his argument that he had cause for failing to exhaust this claim.

Notwithstanding this fact, the Court will not stay these proceedings because the claim that Caple seeks to exhaust is "plainly meritless." As explained above, Caple's claim that Mr. Wile was ineffective for failing to raise the Western Union receipt issue on direct appeal lacks substantive validity. Under Strickland, a petitioner who raises a claim of ineffective assistance of counsel must show that (1) the representation fell below an objective standard of reasonableness, and (2) but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 688, 694. Caple has not shown this. To the contrary, the record shows that the Mr. Wile's strategic decision to omit the Western Union receipt issue from the appellate brief was the result of the professional judgment of an experienced appellate attorney. Moreover, the decision was supported by the law. As a result, the claim that Caple seeks to exhaust in state court is plainly

meritless.  For this reason, the Court will decline to grant his Motion to Stay and deny the claim that Mr. Wile was ineffective in his representation of Caple on direct appeal.

### 2. Caple's Claim that Ms. McMahon was Ineffective is Procedurally Defaulted and Meritless

Caple also claims that Erin Lentz McMahon, the attorney appointed to represent him on his appeal of his Post-Sentence Motion, was ineffective for failing to raise the Western Union receipt issue on that appeal.  (Doc. Nos. 7, 8.)  To recap, Caple was resentenced by the trial court on December 9, 2015, after the Pennsylvania Superior Court held that his original sentence was unconstitutional.  (Doc. No. 17-44.)  On December 21, 2015, Carol Sweeney, Caple's trial counsel, filed a Post-Sentence Motion challenging his sentence.  (Doc. No. 17-13 ¶¶ 22-23.)  The trial court denied the Motion, and Caple then filed a timely Notice of Appeal.  On February 23, 2016, the Court appointed Ms. McMahon to represent Caple on the direct appeal of his Post-Sentence Motion.  (Id. ¶¶ 27-28.)

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), on March 15, 2016, Ms. McMahon filed a Concise Statement of Matters Complained of on Appeal with the trial court.  She raised several issues regarding sentencing.  She also raised the following issue:

> Whether direct appeal counsel, Timothy P. Wile, Esquire, rendered ineffective assistance by failing to properly argue the issue preserved by trial counsel that the search warrant was limited in scope to drugs and drug paraphernalia, and failed to include a search for documentary indicia of possession of Room 215, thus the seizure of the money order was improper, as it had no immediate appearance of criminality?

(Doc. No. 17-25 at 2-3.)

On June 15, 2016, the trial court issued its Rule 1925(a) Opinion, in which it recommended that the judgment of sentence be affirmed.  (Doc. No. 17-22 at 1.)  With respect to the ineffective assistance of counsel claim, the trial court wrote the following:

> Defendant raises multiple instances of ineffectiveness on the part of both appellate counsel and trial counsel. However, at this point, this Court submits that these claims are more properly deferred until collateral review. <u>Commonwealth v. Holmes</u>, 79 A.3d 562, 576 (2013) (finding that absent certain circumstances, claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal); <u>Commonwealth v. Grant</u>, 813 A.2d 726, 738 (Pa. 2002).

(<u>Id.</u> at 12.) Following the trial court's Rule 1925(a) Opinion, Ms. McMahon and Caple jointly decided to withdraw the appeal. On July 28, 2016, Caple filed a Praecipe to Discontinue the Appeal with the Pennsylvania Superior Court. (Doc. No. 17-13 ¶ 33.)

At this point, Caple had already filed several state court <u>pro se</u> PCRA petitions and amended petitions. On September 7, 2016, he filed another amended petition, this time adding a claim that Ms. McMahon was ineffective in her representation of Caple on his appeal of his sentence. (Doc. No. 17-19.) Thereafter, the trial court appointed Mr. McMenamin to represent Caple on collateral review. On December 15, 2016, Mr. McMenamin filed the operative Amended PCRA Petition with the trial court. (Doc. No. 17-13.) Although Caple had raised several claims in his previous <u>pro se</u> PCRA petitions, Mr. McMenamin made it clear that the only issues that the trial court should address were those set forth in Paragraph 38 of the Amended PCRA Petition: (1) whether Mr. Wile was ineffective for failing to request reargument of the warrantless entry issue in the Superior Court; and (2) whether Mr. Wile was ineffective for failing to raise the Western Union receipt issue on direct appeal. (Doc. No. 17-13 ¶ 38.) At the hearing on the Amended PCRA Petition, Mr. McMenamin again stated that the only issues raised on collateral review were the two issues in Paragraph 38. (Doc. No. 17-6 at 6.) Consequently, Caple did not raise the issue of Ms. McMahon's representation on PRCRA review.

Now, on federal habeas review, Caple claims that Ms. McMahon was ineffective for failing to brief the Western Union receipt issue on appeal of the Post-Sentence Motion:

> Following Attorney Wile's mis-representation, Attorney Lentz-McMahon was appointed to represent the Petitioner, and while she did pursue a second appeal on Petitioner's behalf, she incorrectly raised the issue as an ineffectiveness claim within a Superior Court Appeal, rather then including the receipt issue itself in the 1925(b) statement and thereafter arguing the issue itself on direct appeal. Also it appears from the record that once the trial court authored its 1925(a) opinion deferring a decision on the issue, Attorney Lentz-McMahon then abandoned the appeal.

(Doc. No. 8 at 10.) Essentially, Caple claims that Ms. McMahon should not have raised the Sixth Amendment claim that Mr. Wile was ineffective for failing to brief the issue; rather, Caple asserts that Ms. McMahon should have raised the Fourth Amendment claim that the trial court erred in denying his motion to suppresses the Western Union receipt. Magistrate Judge Hart did not consider this claim in the second R&R, but the Court will consider it here.

As an initial matter, Caple's claim that Ms. McMahon was ineffective is unexhausted. Although he raised the issue in his pro se PCRA petitions, this claim was not included in the operative Amended PCRA Petition that was considered by the trial court. Further, at the hearing, Mr. McMenamin specifically stated that Caple no longer asserted any claims with regard to Ms. McMahon. (Doc. No. 17-6 at 5-6.) As a result, the claim is unexhausted.

Further, Caple cannot return to state court to file a second PCRA petition to exhaust this claim. Under 42 Pa. C.S.A. § 9545(b)(1), a petitioner must file a PCRA petition within one year of the date the judgment became final, unless the petitioner proves that:

> (i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa. C.S.A. § 9545(b)(1)(i-iii). Any petitioner invoking one of these exceptions must do so within one year of the date the claim could have been presented. 42 Pa. C.S.A. § 9545(b)(2). For the purposes of PCRA review, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa. C.S.A. § 9545(b)(3).

Here, Caple's sentence became final on July 28, 2016 when he withdrew his direct appeal of the Post-Sentence Motion. Under 42 Pa. C.S.A. § 9545, Caple had until July 28, 2017 to file a PCRA petition. As noted previously, the ultimate Amended PCRA Petition was timely filed on December 15, 2016. However, almost three years has passed since Caple's sentence became final and any subsequent PCRA petition to exhaust this claim would be time-barred.

Furthermore, any attempt to circumvent the PCRA statute of limitations would be futile because this claim does not fall into any of the exceptions enumerated in Section 9545(b)(1), as set forth above. The first exception provides a gateway through the PCRA statute of limitations where the failure to raise the claim was the result of interference of by the government. But from the transcript of the PCRA hearing, it is evident that the failure to raise this claim in the ultimate Amended PCRA Petition was not the result of interference by the government. Instead, it was a strategic decision by Mr. McMenamin, who certified the decision to the state trial court at the PCRA hearing in Caple's presence.

The second exception allows a petitioner to file a second PCRA petition if "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa. C.S.A. § 9545(b)(1)(ii). This exception does not apply here. Caple first articulated the claim against Ms. McMahon in the <u>pro se</u> PCRA petition filed September 7, 2016. The facts alleged in support of that claim in the <u>pro se</u> PCRA petition are

identical to the facts alleged in support of the claim on habeas review. Thus, this claim is not predicated on facts that were unknown to Caple when he filed the operative Amended PCRA Petition. Likewise, Caple does not meet the third exception, which allows a petitioner to file a second PCRA petition where "the right asserted is a constitutional right that was recognized . . . after the time period provided in this section . . . ." 42 Pa. C.S.A. § 9545(b)(1)(iii). The legal arguments advanced by Caple in the September 7, 2016 amended petition are identical to those raised here. No new constitutional right has been recognized. As a result, any attempt to return to state court to exhaust this claim would be unsuccessful. Accordingly, the claim is procedurally defaulted.

Moreover, the claim that Ms. McMahon was ineffective for failing to raise the Western Union issue is meritless for the same reason that the claim that Mr. Wile was ineffective for failing to raise the Western Union issue is meritless. As noted above, to establish a Sixth Amendment ineffective assistance of counsel claim, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694. Caple has not shown this. For one, the plain view doctrine supports the trial court's decision to admit the Western Union receipt into evidence. Thus, even if Ms. McMahon had included the claim in the appeal of the Post-Sentence Motion, it is highly unlikely that the Superior Court would have granted relief and reversed the trial court on this issue. Further, even if the Superior Court had ordered the trial court to exclude the receipt and re-try the case, it is doubtful that the exclusion would have ended the government's case against Caple. (See Doc. No. 17-6 at 29-31.)

In sum, Caple's claim that Ms. McMahon was ineffective is both unexhausted and procedurally defaulted. Caple has not advanced any arguments that might excuse the procedural

default.  In any event, there is no merit to the claim that Ms. McMahon was ineffective for failing to raise the Western Union receipt issue on appeal of the Post-Sentence Motion.  Therefore, the Court will deny this claim.

### C. Caple's Motions for Leave to Amend the Amended Petition

Finally, the Court must decide whether to grant Caple's request to amend his Amended Petition for Writ of Habeas Corpus.

The Federal Rules of Civil Procedure apply to motions to amend habeas petitions.  United States v. Duffus, 174 F.3d 333, 336 (3d Cir. 1999).  Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court should deny leave to amend only in limited circumstances, such as "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  Miller v. Cameron, No. 14-5531, 2016 WL 6892745, at *3 (E.D. Pa. Nov. 23, 2016) (quoting Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003)).  "In determining whether a claim would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Federal Rule of Civil Procedure 12(b)(6)."  Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010).  Thus, "'futility' means that the petition, as amended, would fail to state [a] claim upon which relief could be granted."  Baker v. Diguglielmo, No. 08-3155, 2009 WL 2989387, at *2 (E.D. Pa. Sept. 16, 2009).

Here, Caple seeks to amend the Amended Petition to add a third ground for relief—that the Superior Court "overlooked facts of record, and made [a] decision contrary to Fed[eral] Law" by denying him relief on the warrantless entry issue.  Caple did not raise this proposed issue in the present Amended Petition because the issue was pending before the Pennsylvania Supreme Court until January 1, 2018.

The Court will deny Caple's Motions to Amend the Amended Petition because the proposed claim is non-cognizable, and thus, meritless. As explained with respect to the Western Union receipt issue, claims challenging the admission of evidence in violation of the Fourth Amendment are not subject to federal habeas review. See Stone, 428 U.S. at 494. A petitioner can only circumvent the Stone bar if he can show that he was denied an "opportunity for full and fair litigation" of the Fourth Amendment claim in state court. Id. But this in itself is a formidable challenge. A petitioner cannot show that he was denied an opportunity for full and fair litigation by merely asserting that he disagrees with the state court's decision. Instead, he must show that a "structural defect in the system" prevented his claim. Marshall, 307 F.3d at 82. Courts in this Circuit have found the requisite opportunity for full and fair litigation is satisfied when the state courts provided an opportunity for a pretrial suppression motion, the Superior Court considered the Fourth Amendment claim on appeal, and the Pennsylvania Supreme Court denied the petitioner's petition for allowance of appeal. See, e.g., United States ex rel. Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978); Cruz v. Penna, No. 18-1400, 2018 WL 4326850, at *2 (E.D. Pa. Apr. 18, 2018).

Here, Caple was provided a full and fair opportunity to litigate his Fourth Amendment warrantless entry claim in state court. He availed himself of that opportunity by challenging the warrantless entry in a pre-trial omnibus suppression motion, on direct appeal before the Superior Court, on reconsideration before the Superior Court, and in a petition for allowance of appeal before the Supreme Court. Caple's dissatisfaction with the outcome does not overcome the Stone bar against federal collateral review of Fourth Amendment claims.

Accordingly, even if Caple were permitted to amend the Amended Petition and add this proposed claim, the Court would be precluded from reviewing it. As a result, the claim is meritless

and amending the Amended Petition would be futile.  For this reason, the Court will deny Caple's Motions to Amend.

**D.    Caple is Not Entitled to a Certificate of Appealability**

Finally, a certificate of appealability will not be issued.  The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Based on the Court's analysis, a reasonable jurist could not conclude that the Court is incorrect in denying and dismissing the Amended Petition for Writ of Habeas Corpus.  See 28 U.S.C. § 2253(c)(2).

## V.    CONCLUSION

For the foregoing reasons, the Court will adopt the second Report and Recommendation (Doc. No. 22) in its entirety and deny Caple's Amended Petition for Writ of Habeas Corpus (Doc. No. 7).  Additionally, the Court will deny Caple's Motion for Leave to Stay (Doc. No. 28) and deny Caple's Motions for Leave to Amend the Amended Petition (Doc. Nos. 25, 26).  An appropriate Order follows.